RECORD NO. 14-1198

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

MICHAEL GEMAEHLICH,

*Plaintiff-Appellant,*

v.

DEPUTY KENNETH FERRELL, individually and in his official
capacity as a Roanoke City Sheriff's Office deputy;
DEPUTY FRANK PORTER, individually and in his official
capacity as a Roanoke City Sheriff's Office deputy;
DEPUTY JENNIFER CALLAHAN, individually and in her
official capacity as a Roanoke City Sheriff's Office deputy;
SERGEANT STEPHEN SUTHERLAND, individually and in his
official capacity as a Roanoke City Sheriff's Office sergeant;
OCTAVIA L. JOHNSON, individually and in her official
capacity as Roanoke City Sheriff,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

## OPENING BRIEF OF APPELLANT
## MICHAEL GEMAEHLICH

John P. Fishwick, Jr.
LICHTENSTEIN FISHWICK PLC
101 South Jefferson Street, Suite 400
P.O. Box 601
Roanoke, VA 24004-0601
(540) 345-5890
jpf@vatrials.com

*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                                  YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                       YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                             (date)

# TABLE OF CONTENTS

Table of Authorities……………………………………………… iii

Statement of Jurisdiction……………………………………… 1

Statement of the Issues……………………………………… 2

Statement of the Case……………………………………… 3

Summary of the Argument……………………………………… 17

Argument……………………………………………………… 22

    I.    A Genuine Issue Of Material Fact Existed On Whether Excessive Force Was Used Against Michael At The Docketing Counter Which Should Have Precluded Summary Judgment And Permitted The Jury To Consider The Entire Claim…………………………………………………….. 22

        A.    Standard of Review……………………………… 22

        B.    Argument………………………………………… 22

    II.    The District Court Erred In Refusing To Separately Instruct The Jury On Conspiracy………………………………… 26

        A.    Standard of Review……………………………… 26

        B.    Argument………………………………………… 26

    III.    The District Court Erred In Permitting Defense Counsel To Inject Into The Trial Michael's Consultations With Counsel… 30

        A.    Standard of Review……………………………… 30

        B.    Argument………………………………………… 30

i

IV.   The District Court Abused Its Discretion In Denying The
      Motion For New Trial…………………………………………    33

      A.   Standard of Review………………………………………    33

      B.   Argument…………………………………………………    33

V.    The District Court Erred In Denying Michael's Objection To
      The Magistrate Judge's Discovery Ruling On Defendants'
      Prior Uses Of Force…………………………………………    36

      A.   Standard of Review………………………………………    36

      B.   Argument…………………………………………………    37

VI.   The District Court Erred In Dismissing Michael's § 1983
      Claims Against Sheriff Johnson……………………………    41

      A.   Standard of Review………………………………………    41

      B.   Argument…………………………………………………    41

VII.  The District Court Erred In Dismissing Michael's Assault
      And Battery Claims…………………………………………    47

      A.   Standard of Review………………………………………    47

      B.   Argument…………………………………………………    47

Conclusion………………………………………………………...    50

Request for Oral Argument……………………………………………    50

Certificate of Compliance……………………………………………...    50

Certificate of Service…………………………………………………    51

# TABLE OF AUTHORITIES

## CASES

*Aetna Casualty & Surety Company v. Yeatts,* 122 F.2d 350 (4th Cir. 1941)…………………………………………………………… 33

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………… 42

*Beck v. Hail*, 377 F.3d 624 (6th Cir. 2004), *overruled on other grounds by, Adkins v. Wilever*, 554 F.3d 650 (6th Cir. 2009)……….. 36

*Bing v. Haywood*, 283 Va. 381, 722 S.E.2d 244 (2012)…………….. 48

*Bland v. Roberts,* 730 F.3d 368 (4th Cir. 2013)……………………… 22

*Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182 (4th Cir. 1994)…………………………………………………….. 34

*Byrd v. Blue Ridge Cooperative*, 356 U.S. 525 (1958)……………… 22

*Carson v Polley,* 689 F.2d 562 (5th Cir. 1982)……………………… 40

*Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)……………… 18, 26

*City of Canton v. Harris*, 489 U.S. 378 (1989)……………………… 46

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000)…………………….. 46

*Eng v. Scully*, 146 F.R.D. 74 (S.D. N.Y. 1993)……………………… 39

*Figg v. Schroder*, 312 F.3d 625 (4th Cir. 2002)…………………….. 33

*Frails v. City of New York*, 236 F.R.D. 116 (E.D. N.Y. 2006)……… 37

*Frymire-Brunati v. KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993) 36

iii

*Garcia v. Murphy Pacific Marine Salvaging Company*,
476 F.2d 303 (5th Cir. 1973)……………………………………….    22

*Gibbs v. City of New York*, 243 F.R.D. 95 (S.D. N.Y. 2007)………...    38

*Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005)……………………    38

*Hafner v. Brown*, 983 F.2d 570 (4th Cir. 1992)………………………    27

*Herbert v. Lando*, 441 U.S. 153 (1979)……………………………...    37

*Hickman v. Taylor*, 329 U.S. 495 (1947)……………………………    37

*Ismail v. Cohen*, 706 F. Supp. 243 (S.D. N.Y. 1989), *aff'd* 899 F.2d
183 (2nd Cir. 1990)…………………………………………………...    39

*Jackson v. Fletcher*, Case No. 7:09cv00408, 2011 WL 197954
(W.D. Va. Jan. 18, 2011)………………………………………………    48

*King v. Conte*, 121 F.R.D. 180 (S.D. N.Y. 1990)……………………    39

*Kolon Industries, Inc. v. E.I. DuPont de Nemours & Co.,*  748 F.3d
160 (4th Cir. 2014)……………………………………………………    36

*Kopf v. Skyrm*, 993 F.2d 374 (4th Cir. 1993)…………………………    39

*Malek v. Federal Insurance Co.*, 944 F.2d 49 (2nd Cir. 1993)………..    36

*Montgomery Ward & Company v. Duncan*, 311 U.S. 243 (1940)…...    20, 34

*Moore v. Guthrie Hospital, Inc.*, 403 F.2d 366 (4th Cir. 1968)………    23

*National Union Fire Insurance Company of Pittsburgh, Pa. v.
Murray Sheet Metal Co., Inc.*, 967 F.2d 980 (4th Cir. 1992)…………    37

*O'Neill v. Krzeminski*, 839 F.2d 9 (2nd Cir. 1988)…………………...    39

iv

*Pacheco v. City of New York*, 234 F.R.D. 53 (E.D. N.Y. 2006)……..                38

*Pandazidies v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994)…………………………………………………….                22

*Phillips v. City of New York*, 277 F.R.D. 82 (E.D. N.Y. 2011)………                40

*Ruther v. Boyle*, 879 F. Supp. 247 (E.D. N.Y. 1995)………………...                40

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)……………………………..                41, 42

*Secretary of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700 (4th Cir. 2007)………………………………………….                41, 47

*Unger v. Cohen*, 125 F.R.D. 67 (S.D. N.Y. 1989)…………………..                40

*United States v. Dakota Cheese, Inc.,* 906 F.2d 335 (8th Cir. 1990)…                23

*United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007)…………………                30

*United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995)…………………...                18, 27

*Volvo Trademark Holding Aktiebolaget v. Clark Machine Company,*510 F.3d 474 (4th Cir. 2007)……………………………….                26

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), *as modified on denial of rehearing* (Dec. 8, 1993)……………………………….                39

*Ziemba v. Wezner*, 366 F.3d 161 (2nd Cir. 2004)……………………..                49

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)…………….                49

*Zobrafov v. V.A. Medical Center*, 779 F.2d 967 (4th Cir. 1985)……...                49

# CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. Amendment VII…………………………………………    22

Va. Code Sec. 8.01-243.2……………………………………    3, 21, 47, 48

28 U.S.C. Sec. 1291……………………………………………    1

28 U.S.C. Sec. 1331……………………………………………    1

28 U.S.C. Sec. 1343……………………………………………    1

28 U.S.C. Sec. 1367……………………………………………    1

42 U.S.C. Sec. 1997e……………………………………………    49

42 U.S.C. Sec. 1983……………………………………………    2, 3

F.R.C.P. 12(b)(6)………………………………………………..    41, 46

F.R.C.P. 26……………………………………………………...    20, 37

F.R.C.P. 38……………………………………………………...    22

F.R.C.P. 56……………………………………………………....    22

F.R.C.P. 59……………………………………………………...    20, 33

F.R.E. 401………………………………………………………    31

F.R.E. 402………………………………………………………    31

F.R.E. 403………………………………………………………    32

F.R.E. 404………………………………………………………    39, 41

No. 14-1198

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

MICHAEL GEMAEHLICH,

*Appellant,*

v.

OCTAVIA L. JOHNSON, *et al.,*

*Appellees.*

On Appeal from the United States District Court
for the Western District of Virginia
Roanoke Division (The Hon. Samuel G. Wilson)

BRIEF OF THE APPELLANT

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal civil rights action and

pendent state law claims, pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  The

district court entered final judgment in favor of the Appellees on January 30, 2014.

Appellant, Michael Gemaehlich, filed a timely notice of appeal on February 28,

2014, and an amended notice of appeal on March 19, 2014.  Therefore, this Court

has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I.    Did the district court err in ruling as a matter of law that the incident at the intake counter was not excessive force, thereby refusing to permit the jury to consider this part of the incident when adjudicating Michael Gemaehlich's claims?

II.    Did the district court err in refusing to provide a separate jury instruction on conspiracy?

III.    Did the district court err in permitting defense counsel to inject into the trial Michael Gemaehlich's consultation with counsel which occurred prior to filing his complaint with the Sheriff's Office?

IV.    Did the district court err in denying the Motion for a New Trial?

V.    Did the district court err in denying Michael Gemaehlich's objection to the Magistrate Judge's discovery ruling concerning defendants' complaint histories and prior uses of force?

VI.    Did the district court err in dismissing Michael Gemaehlich's § 1983 claims against Appellee Johnson?

VII.    Did the district court err in dismissing Michael Gemaehlich's state law assault and battery claims?

2

## STATEMENT OF THE CASE

Michael Gemaehlich ("Michael") filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 against then Roanoke City Sheriff Octavia Johnson and Roanoke City deputies Kenneth Ferrell, Jennifer Callahan, Frank Porter, and Sergeant Stephen Sutherland, seeking relief for the excessive force he suffered on November 16 and 17, 2010, while he was a pretrial detainee at the Roanoke City Jail. (JA 34). Michael also brought state law claims for assault and battery. Michael alleged that the defendant deputies used excessive force against him, and that Sheriff Johnson was the supervisory officer responsible for the conduct of the deputies, as well as the final policymaker for the Roanoke City Sheriff's Office responsible for the promulgation of a policy or custom regarding the use of excessive force.

Defendants filed a Motion to Dismiss, and by Order entered February 14, 2013, the Court dismissed the claims against Sheriff Johnson and the claims for assault and battery finding that the state law claims were barred by the one year statute of limitations in Virginia Code § 8.01-243.2. (JA 69, 78).

On March 26, 2013, Magistrate Judge Robert S. Ballou denied in part Plaintiff's Motion to Compel documents related to prior use of force incidents involving the deputies. (JA 175-177). Michael objected to Judge Ballou's Order,

3

and Judge Wilson overruled the objections, finding that evidence of prior incidents and bad acts was not discoverable or relevant to Michael's claims. (JA 204-205).

By Order entered November 21, 2013, the Court granted summary judgment as to the use of force that occurred during intake at the docketing counter but denied the motion as to the use of force that occurred in the cell. (JA 393).  The Court found that the video recording of the intake counter use of force substantiated the defendants' contention and eliminated any disputed material fact as to that aspect of the claim.  Thus, the Court broke Michael's single excessive force claim into two separate incidents – one at the intake counter and one at the cell.  Michael had not presented his claim as two separate instances, but rather, as one continuous incident involving the use of excessive force which began at the intake counter and then continued into the cell.

On November 22, 2013, the Court heard argument on a number of motions in limine, and ruled on some while taking others under advisement.  Among the rulings made from the bench, the Court decided, over Michael's objection, that it would permit defense counsel to question Michael at trial on whether he consulted with an attorney prior to making his complaint to the Sheriff's department. (JA 417-418).

4

The matter proceeded to a jury trial on the claims against the individual defendants on December 3 - 5, 2013. Michael testified that he was arrested for DUI and taken to the Roanoke City Jail on November 16, 2010. (JA 528).  After a lengthy period of time during which Michael waited in the docketing area with his hands restrained behind his back, the deputies called him to the intake counter. (JA 532-533).  Defendants Porter and Ferrell conducted a search, and defendant Callahan was across the counter from Michael. (JA 533-534). While the deputies looked on, Michael emptied his pockets, removed his belt and boots and adjusted his socks and pants legs. (*Id*.).  Michael then placed his hands on the counter and moved his legs apart. (*Id*.). The deputies began to search Michael. (*Id*.). A deputy told Michael to lift up his right leg, and Michael thought they wanted him to lift his pants leg up. (*Id*.).  He bent down to lift his pants leg, at which point he was suddenly restrained, with his arms behind his back. (*Id*.). Porter had him on the left, Ferrell on the right, and he was thrown on the counter. (*Id.*). He felt a sharp, echoing pain under his ears, and believes that Callahan had his ears from the other side of the counter. (JA 534-535). Video footage of this incident was played for the jury.[1] (JA 535-536; JA Vol. IV, Video Disk 1, ch03 video file).  As the defendants

---

[1] In order to play the video files on the discs, Court personnel should place the disc in their computer DVD drive, and then select their DVD disc drive on the computer.  A variety of files and folders will appear.  Personnel should double

were walking him out of the docketing area to take him to a cell, restrained, one

defendant told him that his mouth was going to get him in more trouble than he

was already in. (*Id.*). Michael did not resist or struggle with defendants in any

way; they had complete control of him, with his hands tightly restricted behind his

back. (JA 536-537). It was very painful. (*Id.*). Defendants took him to the cell.

(JA 537-539). Callahan went in, took the mat out, and then came back out. (*Id.*).

Ferrell and Porter took Michael into the cell. (*Id.*). Michael put his knees on the

bench and defendants pushed him forcefully down onto the bunk. (*Id.*). While he

was restrained face down on the metal bench with his arms held behind his back,

defendants struck his head, neck, arms, kidneys, back, and ribs. (*Id.*). Defendants

also applied force to the pressure points behind his ears. (*Id.*). He was struck at

---

click on the "bin" folder. Personnel should then select the "PELCO" player
(filename DX8100V.exe) which is a blue icon containing the word "PELCO" and a
white logo. Double clicking on the "PELCO" icon will open the PELCO video
player. A listing of video files will appear in the Playlist on the right side of the
screen. The video files have a naming convention beginning with the date of the
file and then the time of the file. For example,
"111710_100251__111710_100449" is the video file taken on November 17, 2010
from 10:02:51 to 10:04:49. All times are listed in military time. Double clicking
on a particular video file in the playlist will start the video for that particular date
and time period. The next video file will automatically begin playing after the end
of the previous file. The particular camera will be identified as [ch02], [ch03], or
[ch10], before the date and time of the file. Camera [ch10] files have video only
with no sound. The files from the remaining cameras have both video and sound.

least 20 times, during which defendants repeated, "don't get up," and "stop resisting." (*Id*.).

Video footage depicting the area outside of the cell was shown at trial (there is no video footage of the inside of the cell). (JA 539-540; JA Vol. IV, Video Disk 1, ch10 video files). The footage shows defendants arriving at the cell door with Michael, Callahan going into the cell and bringing out the mat, Porter and Ferrell taking Michael into the cell, and Callahan walking into the cell. (*Id.*).  As Callahan enters the cell, the video footage suddenly jumps a minute and seventeen seconds into the future. (*Id*.).  Callahan enters the cell at 12:28:05, and then the video jumps to 12:29:23. (*Id*.). When the footage resumes, Callahan is back outside the cell, and defendant Sutherland is standing there with her.  One minute and seventeen seconds of the video is missing. (*Id.*).

Several hours later, Michael was taken out of the cell for fingerprints and mug shots by other deputies. (JA 542).  Michael was able to identify the injury behind his ear on the mug shot. (*Id.*; JA 621-622).  Though Michael specifically requested all video showing him at the Jail during November 16-17, 2010, defendants have never provided him with any video of him leaving his jail cell to go to the intake area for mug shots and fingerprints, or any video footage of him returning to his cell after that period. (JA 634, 545).  He was also never provided

7

with any video footage showing him being fingerprinted or photographed, or leaving his cell to go to the intake area when he was processed out of the Jail. (*Id.*).

After he was released from jail, Michael and his mother picked up his car, and then proceeded to the Police Station to complain about the beating at the Jail. (JA 550-552). Michael's mother completed the form for him, because his hand was injured and he could not write. (*Id.*; JA 633). Officer Hubbard of the Roanoke City Police Department took photographs of his injuries. (JA 552-553; JA 605-612).

After meeting with Detective Hubbard, Michael received medical attention for the injury to his hand, a fracture to the right fifth metacarpal. (JA 554). He was later contacted by Detective Hubbard who told him that he needed to make a complaint at the Sheriff's department. (JA 554-555). Prior to filing the complaint with the Sheriff's Office, Michael consulted an attorney. (JA 555). On December 8, 2010, Michael and his mother went to the sheriff's department and filled out the complaint form. (JA 555-557; JA 634). In the complaint, Michael requested all video footage of his stay in the Roanoke City Jail. (*Id.*). Michael was asked to return and give an interview to Lt. Mark Sweetenberg. (JA 558-562; JA Vol. IV, Audio Recording). In both of his written statements concerning the incident,

8

Michael consistently documented the excessive force used against him at the docketing counter and in the cell. (JA 633, 634).

Blake King had been arrested with Michael on November 16, 2010. (JA 507). Blake came into contact with defendants in the docketing area. (JA 508-509). When Blake asked for the names of the defendants or tried to read their name tags, defendants pushed his head down. (*Id.*). After searching Blake at the intake counter, defendants secured his hands behind his back, and then dragged him through the door. (JA 509-510). Defendants opened up a cell door, pulled the mat out, and threw Blake down on the bed. (*Id.*). One defendant put his knee on Blake's head and dug his thumb into Blake's ear area, and said if Blake tried to get up, it would be noncompliance. (*Id.*). Later, Blake heard the deputies bring Michael down the hall. (JA 511). Once the deputies put Michael into a cell, Michael was yelling, "Please stop, stop, you're hurting me." (*Id.*). The deputy responded, "You're doing this to yourself." (*Id.*). Blake heard a lot of banging, meanwhile Michael kept saying words to the effect of, "Please stop, you're really hurting me." (*Id.*). When defendants left, Blake asked Michael if he was okay, but Michael did not answer. Blake could just hear Michael crying. (*Id.*). Upon release from jail, Blake saw bruises and marks on Michael's neck, which were similar to the ones Blake had from the force used by defendants. (JA 512).

Brenna Davis, Michael's mother, testified that when she picked up Michael from the Jail on November 16, 2013, she immediately noticed that his right hand was largely swollen and he had some big red raised areas underneath both of his ears. (JA 478-479).  Michael told her that he had been beaten up. (*Id.*).  At the direction of the Sheriff's Office, Michael and his mother went next door (to the police department) to file a report. (JA 479).  Brenna completed the complaint form because Michael was unable to write due to the hand injury. (JA 483). Roanoke City Police Officer Hubbard photographed Michael's injuries, and these pictures were published to the jury. (JA 605-612). Brenna walked the jury through the photographs pointing out the injuries she noted. (JA 487-490).  In addition to the hand and ear injuries, Brenna noticed other injuries when Officer Hubbard was photographing Michael including an abrasion on Michael's back that resembled a shoe print, an abrasion above his waist, and possibly a lump on his head. (JA 485). After filing the report, they went to Urgent Care Family Practice, where Dr. Daugherty diagnosed Michael with a fractured hand. (JA 483-484).  They proceeded to Dr. Torre, an orthopedic, who adjusted the bone and put on a cast. (JA 485).  Brenna also tried to photograph the injuries, and these photos were published to the jury during her testimony. (JA 493-497; 613-619).  Brenna

10

testified that when she saw Michael, she knew that something had hit him very, very hard in order to leave those marks. (JA 490-491).

Weeks later, Brenna and Michael learned that Michael needed to file a complaint with the Sheriff's department, and they proceeded there to do so. (JA 491). Brenna completed the form because Michael's hand was in a cast. (JA 492).

According to stipulation of the parties concerning the video footage produced by the Sheriff's Office: video footage provided by the Sheriff's Office in response to an inquiry from the Police Department was created or last modified on November 19, 2010 (after Michael complained to the police department but before he complained to the Sheriff's Office); Video Disk 1 was created or last modified on November 24, 2010 (before Michael complained to the Sheriff's office), and Video Disk 2 was created or last modified on December 14, 2010 (after Michael made his complaint to the Sheriff's Office but before he was interviewed by Sweetenberg concerning his complaint). (JA 620).

Dr. John Daugherty testified that he saw Michael on November 17, 2010. (JA 685). His notes indicate: "20 year-old seen to evaluate right hand pain .... Arrested yesterday evening. Evidently was handcuffed behind his back, grabbed by the neck, thrown forward on the floor, and evidently struck by the officers that were putting him in the cell. Evidently he was also clubbed around his back.

Complains of pain in right neck, bumps on the back of his head as well as various areas of pain in the area of the back." (JA 685-686). Dr. Daugherty's examination revealed: "Abrasions right side of the neck, scattered abraded areas in the back, obvious swelling of the right fifth MCP joint, or the fifth finger joint of the right hand and did not notice anything else." The x-rays showed a fracture of the right fifth metacarpal, so Dr. Daugherty referred Michael to Dr. Torre. (JA 686-688).

Dr. Brian Anthony Torre testified that he treated Michael for a fracture of his right fifth knuckle on November 17, 2010. (JA 665-666). Michael told Dr. Torre that he had been taken into custody and was assaulted and sustained an injury to his right hand. (JA 666). A significant force, not trivial, is required to fracture the bone structure. (JA 667). The type of fracture Michael sustained can result from force being applied to the hand when it is in a flexed position. (*Id.*, 671). Dr. Torre concluded that the cause of the fracture to Michael's right fifth metacarpal was trauma to his right hand from an assault. (JA 671).

Lieutenant Brian Geiser served as a records custodian and identified the jail incident reports defendants Porter, Callahan and Ferrell prepared regarding Michael. (JA 675; JA 834-837). All of the incident reports were prepared at exactly the same time, and all noted that nothing happened to Michael in the cell. Nevertheless, Ferrell included in his report the following statement: "At no time

12

during this process did inmate Gemaehlich complain of having any bodily injuries." (JA 836-837).

Major David Bell, chief deputy at the Roanoke City Sheriff's Office, testified that, aside from the video footage provided to Michael and admitted into evidence, two additional cameras would have captured Michael during the walk from docketing to the cell. (JA 693-694). He also confirmed that there were cameras in the fingerprint and picture area of docketing which would have recorded Michael when he was fingerprinted and photographed a few hours after he had been beaten. (JA 694). The video footage was kept for 30 days before it was recorded over. (JA 696-697). Major Bell identified the supervisor's signature on the incident reports as Lieutenant Jenkins. (JA 695-696).

Deposition testimony of defendants Callahan, Porter and Sutherland was read into the record. Deputy Callahan testified that booking three detainees into the Jail constituted a "light night." (JA 698). She testified that pressure points are certain points in the body that you can apply pressure to, in order to "gain someone's attention," by causing pain. (JA 698-699). She confirmed the existence of pressure points under the ear, which they learned to activate by pushing up and under the ear with their thumb. (JA 699-700). She also confirmed that defendant Sutherland is the person who appears with her outside of Michael's cell door when

13

the video resumes after it stops when defendants Ferrell, Porter, and Callahan enter the cell with Michael. (JA 700). Defendant Porter confirmed that defendants Porter, Callahan and Ferrell worked together frequently in the intake duty post. (JA 701). Defendant Sutherland testified that Lieutenant Jenkins (whose signature appears on the incident reports prepared by defendants and dated November 17, 2010) was on military leave on the night in question. (JA 702).

Plaintiff rested. Judge Wilson overruled the defense motion to strike, and trial continued. (JA 712-713)

Callahan, Ferrell, Porter, and Sutherland, all testified that they did not hit, assault, or use pressure point tactics on Michael, and that Michael was not injured. (JA 726, 728, 730, 732, 735, 753, 755, 758, 776, 777, 778, 779, 785). Defendants testified that they restrained Michael at the intake counter so they could finish their search safely. (JA 749, 776). Porter acknowledged that when they restrained Michael to the counter, Michael told defendants that he had misunderstood the instruction. (JA 762). Porter stated that he would have let go of Michael's arms while they led him to the cell if Michael had apologized. Porter felt that he needed an apology from Michael. (JA 760-761).

Callahan, Porter and Ferrell all admitted to preparing incident reports for Michael; but none of them provided a valid explanation for preparing "incident"

14

reports, since they all claimed there was no incident. (JA 741-742, 760, 781-782). Furthermore, the incident reports were signed by a supervisor, Lt. Jenkins, who was on military leave the night of the incident, thus calling into question the date and time that the incident reports were actually prepared. (JA 702). Nor did any defendant provide an explanation for the relatively long time period spent in the cell - - up to one minute and 30 seconds.

The defense rested, and Defense counsel renewed the motion for judgment as a matter of law, which Judge Wilson took under advisement. (JA 870, 877). The Court did not strike the conspiracy claim raised by Plaintiff. The Court, however, did refuse to provide a separate jury instruction for conspiracy, ruling that it was not a separate claim and that it would just be a way to prove excessive force. (JA 873-878).

During closing arguments, defense counsel improperly referred to Michael and his mother having already talked to an attorney before filing the complaint with the sheriff's office, and stated that from the moment this incident occurred, his and his mother's focus became the pursuit of a lawsuit. (JA 899, 906).

Judge Wilson instructed the jury, and the jury began its deliberations at 11:46 a.m. (JA 930). Judge Wilson limited the jury's consideration of the excessive force claim to what occurred in the cell. (JA 921-923). Both the

15

instructions and the verdict form addressed only whether the deputies used excessive force against Michael in the cell.  At 1:44 p.m., the jury sent a request for certain exhibits, requesting all logs, all photos, and videos of the search and being taken to the cell.  (JA 930).  The logs, photos and paper exhibits were sent back with the jury, and the clerk played the video of the search and the video of Michael being taken to his cell. (JA 931).  At 2:37 p.m., the jury asked the following question: "Did the plaintiff, Michael Gemaehlich, see a lawyer before he filed the second complaint with the sheriff's department? (not with the city the first time)." (JA 932).  The jury was instructed that all the evidence was in and they were to rely on their collective memory concerning such matters. (JA 933).  After deliberating for three and a half hours, the jury returned a verdict for the deputies. (JA 933-936).

Michael filed a Motion for a New Trial and/or to Alter or Amend the Judgment on January 2, 2014. (JA 959).  Michael argued that the verdict was against the clear weight of the evidence and would result in a miscarriage of justice, based on: the Court's ruling that defense counsel could question Michael as to whether he consulted with counsel prior to making his complaint to the Sheriff's Department; the Court's refusal to provide a separate instruction on conspiracy; and the Court's refusal to permit the jury to consider the incident at the intake

16

counter as part of the claim regarding the use of excessive force. (JA 961).  The

Court denied the Motion for a New Trial from the bench on January 30, 2014, (JA

1009) and Michael filed a timely Notice of Appeal to this Court on February 28,

2014, and an Amended Notice of Appeal on March 19, 2014. (JA 1018).

## SUMMARY OF ARGUMENT

The Court erred in granting Summary Judgment as to the use of force

against Michael at the docketing counter.  The Court's erroneous ruling resulted in

the jury not being able to consider the incident at the counter as part of the claim of

excessive force, thus violating Michael's right to have the jury determine all

relevant issues of fact.  Michael raised one claim of excessive force, beginning at

the intake counter and continuing down the hall and into the cell.  The Court

improperly separated the claim into two incidents, granted summary judgment on

the use of force at the counter only, and then restricted the jury to finding excessive

force based solely on what occurred in the cell.  Michael testified that when the

defendants slammed him to the counter, he felt incredible sharp pain behind his

ears, which continued despite his lack of resistance or struggle.  Because of the

angle of the video footage, it is impossible to find that this did NOT happen.

Michael's testimony about the injuries inflicted at the counter was further

substantiated by the photographs and his mother's testimony.  There was a material

17

genuine issue of fact as to whether the level of force used was proportionate to the need, and that should have been determined by the jury. By granting summary judgment as to the conduct at the counter, the Court implicitly informed the jury that the conduct of the defendants at the counter was legitimate, which then removed that determination from the jury's province and provided a pre-ordained standard against which they had to make their judgments. This was error.

At trial, the Court did not strike Michael's conspiracy claim, but refused to provide the jury with a separate instruction on conspiracy (also noted as a ground in support of a new trial). The test for finding jury instructions adequate is whether the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999). A district court's refusal to provide an instruction requested by a litigant constitutes reversible error if the instruction was not substantially covered by the court's charge to the jury. *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995). The jury was unable to evaluate the facts regarding the conspiracy claim, because it was not instructed on conspiracy. Since the Court's charge to the jury did not cover the conspiracy claim, the instructions were inadequate, and the failure constituted reversible error.

18

The Court erred in ruling that defense counsel could question Michael at trial as to whether he consulted with counsel prior to making his complaint to the Sheriff's Department.  This ruling put Michael in an untenable position - - he was required to either reveal protected attorney client communications or let the jury speculate as to what occurred at Michael's meeting with counsel.  The Court recognized this problem in its September 27, 2013 Memorandum Opinion, when it ruled this information was not discoverable, and yet permitted this line of questioning at trial.  This allowed defense counsel to argue that Michael and his mother were motivated early on to bring a lawsuit and to suggest that they colluded in some way.  The fact that Michael consulted with counsel prior to making his complaint to the Sheriff's Office was irrelevant to Michael's claims of excessive force and conspiracy, and, certainly, any remote probative value was far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  The jury was misled, as evidenced by its question regarding the timing of Michael's consultation with counsel, and Michael was unfairly prejudiced by the argument that consulting with a lawyer is a mark against credibility.

The District Court abused its discretion in denying the Motion for New Trial, as the verdict was against the clear weight of the evidence, would result in a

19

miscarriage of justice, and raises questions of law arising out of substantial errors in admission or rejection of evidence or instructions to the jury. F.R.C.P. 59; *Montgomery Ward & Company v. Duncan*, 311 U.S. 243, 251 (1940).  The evidence at trial required a Plaintiff's verdict.  The following pre-trial and trial circumstances, though, were permitted to improperly influence the trial, which undermined the evidence and resulted in a miscarriage of justice:

- The Court's erroneous ruling on Summary Judgment prevented the jury from considering the entire use of force against Michael and improperly legitimized the defendants' actions.

- The Court did not strike Michael's conspiracy claim, but refused to instruct the jury on conspiracy.

- The Court erred in ruling that defense counsel could question Michael at trial as to whether he consulted with counsel prior to making his complaint to the Sheriff's Department.

In other pre-trial proceedings, the Court abused its discretion in denying Michael's objection to the Magistrate Judge's discovery ruling concerning defendants' prior uses of force.  Federal Rule of Civil Procedure 26 provides that parties may obtain discovery of any matter, not privileged, that is relevant to the claim.  Documentation concerning defendants' prior uses of force was discoverable

as it could reasonably lead to relevant evidence of motive, opportunity, intent, preparation, plan, or knowledge.

The Court also erred in granting the motion to dismiss the claims against Sheriff Johnson. The Second Amended Complaint, when viewed in the light most favorable to Michael, alleges that Sheriff Johnson knew of a pervasive and unreasonable risk of constitutional injury and failed to act under circumstances that give rise to an inference of deliberate indifference.

Lastly, the Court should not have granted the motion to dismiss the assault and battery claims pursuant to the one-year statute of limitations in Virginia Code § 8.01-243.2. On November 17, 2011, one year from the date of the assault, the case law indicated that the truncated statute of limitation did not apply to pretrial detainees who were not confined at the time of filing suit. Therefore, the one year statute of limitations should not have been applied to bar Michael's assault and battery claims.

Based on the foregoing errors, the judgment of the District Court should be reversed, and the case remanded.

# ARGUMENT

**I.    A Genuine Issue Of Material Fact Existed On Whether Excessive Force Was Used Against Michael At The Docketing Counter Which Should Have Precluded Summary Judgment And Permitted The Jury To Consider The Entire Claim**

## A.  Standard of Review

Denying the right to a jury trial under the Seventh Amendment is reviewed *de novo. Pandazidies v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994). If the right was denied, the Court must then determine if the denial constituted harmless error. *Id.*  The Court reviews *de novo* a district court's order granting summary judgment. *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013).  Summary judgment is appropriate if the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. F.R.C.P. 56(a).

## B.  Argument

The Seventh Amendment of the United States Constitution preserves the right of trial by jury.  Federal Rule of Civil Procedure 38(a) provides that the constitutional right to a jury trial is preserved to the parties inviolate.  Federal policy favoring jury decisions on questions of disputed fact flows from the Seventh Amendment. *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 538 (1958).  A district court cannot predetermine facts for a jury. *Garcia v. Murphy Pacific Marine Salvaging Company*, 476 F.2d 303 (5th Cir. 1973).  The right to a jury trial includes

22

the right to have the jury decide all relevant issues of fact. *United States v. Dakota Cheese, Inc.*, 906 F.2d 335 (8th Cir. 1990). Where evidence against a defendant affords a rational choice for competing inferences, the Seventh Amendment requires that the claim be submitted to the jury. *Moore v. Guthrie Hospital, Inc.*, 403 F.2d 366 (4th Cir. 1968).

Michael alleged one claim of excessive force against defendants which began with the use of force at the docketing counter and continued until defendants left Michael's cell. The District Court disaggregated the event into discrete parts and then granted defendants' motion for summary judgment as to the force used against Michael during intake at the docketing counter, but denied it as to the force used against Michael in the cell, just moments later. In ruling, the district court relied solely on the video, stating "In light of the recording, the court finds it indisputable that the deputies used reasonable force in a good faith effort to maintain and restore discipline, not maliciously and sadistically for the purpose of causing Gemaehlich harm." (JA 391-392).

Michael testified that defendants Porter and Ferrell slammed him to the counter, and that defendants Callahan and/or Porter or Ferrell applied extreme pressure to points below his ears. (JA 533-535). This use of pressure inflicted pain and caused injury. (*Id.*). The injuries were noted by Michael's mother when she

23

picked him up from the Jail. (JA 478-479). Defendants deny that they applied force to pressure points, but claim that their actions were necessary in light of the threat presented when Michael misunderstood their instruction to "lift his leg" and instead reached down to lift his pants leg. (JA 749). Defendants stated that Michael could have had a weapon in his sock. (JA 776) Michael testified, though, as corroborated by the video that he did not struggle or resist the defendants, and immediately tried to explain his mistake. (JA 534-536; JA Vol. IV, Video Disk 1, ch03 video file). Pain is evident in his voice. JA Vol. IV, Video Disk 1, ch03 video file). Moreover, defendants' actions and their justification based on the "threat" presented are severely called into question by the fact that just previously, Michael removed his own boots for defendants and spent time straightening his socks and adjusting his pant leg without any intervention from defendants. (JA Vol. IV, Video Disk 1, ch03 video file). The video alone cannot corroborate anyone's testimony concerning the application of force to points below Michael's ears because of the camera angle. The photographs provided in summary judgment and trial proceedings reflect the injuries under Michael's ears. (JA 605-612, JA 312). Almost immediately after slamming Michael to the counter, defendants all together walk Michael from the docketing area, restrained, and state that his mouth

24

is going to get him in more trouble. (JA Vol. IV Video Disk 1, ch03, ch10 video files).[2]

Therefore, on summary judgment proceedings, a disputed and genuine issue of material fact existed as to whether the excessive force began at the intake counter and then continued into the cell, which should have precluded summary judgment. The contrary ruling, however, unnaturally truncated Michael's claim and resulted in the jury not being able to consider the use of force at the intake counter as part of the excessive force claim. The jury instructions and the verdict form were limited to the question of whether defendants used excessive force "in the cell." (JA 944, 946-947). By removing from the jury the issue of force at the counter, the district court implied to the jury that these actions were legitimate, which cloaked the defendants' continuing conduct with justification it did not deserve. The ruling represented an invalid predetermination of facts that should have been left to the jury. The district court's incorrect summary judgment ruling violated Michael's right to have the jury decide all relevant issues of fact. As such, the judgment should be reversed.

---

[2] Regarding the facts alleged in this paragraph, the parties testified consistently at trial and deposition concerning these matters and these facts were available to the district court in summary judgment proceedings. (JA 239, dkt 132-2, pp. 37-38, 59; dkt 142-1, p. 59-60; JA 272, dkt 132-10, p. 26, 84; dkt 142-25, p. 41-42; JA Vol. IV, video disk 1, video file ch-03 which was provided on summary judgment proceedings as reflected in JA 270).

## II.  The District Court Erred In Refusing To Separately Instruct The Jury On Conspiracy

### A.  Standard of Review

The district court's jury instructions are reviewed for abuse of discretion. *Volvo Trademark Holding Aktiebolaget v. Clark Machine Company*, 510 F.3d 474, 484 (4th Cir. 2007).

### B.  Argument

At the conclusion of the evidence, defense counsel moved to strike all the claims, including the conspiracy claim.   The district court took the motion under advisement, but then refused to submit a separate instruction on conspiracy. (JA 873-877).  The district court opined that the conspiracy claim was not a separate claim, but a way to prove excessive force. (*Id.*).  The court proposed its own instruction which combined the elements of excessive force and conspiracy. (*Id.*; JA 956).  Because the instruction improperly combined the elements of two claims and would very likely cause confusion, Plaintiff's counsel requested that the Court not give the combined instruction. (*Id.*).  It was abuse of discretion to withhold instruction on the conspiracy claim at the liability phase.

Jury instructions are adequate if the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999).  A district

26

court's refusal to provide an instruction requested by a litigant constitutes reversible error if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the litigant's ability to try his case. *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995). In *Hafner v. Brown*, 983 F.2d 570, 576-77 (4th Cir. 1992), this Court recognized that claims for excessive force and conspiracy to use excessive force are separate claims, and provided separate instructions to the jury on those claims. Plaintiff submitted separate instructions for the conspiracy claim. (JA 452).

The district court did not strike the excessive force or conspiracy claims, but refused to separately instruct the jury on conspiracy. The conspiracy claim was not substantially covered by the court's charge to the jury, nor would it have been had Plaintiff's counsel agreed to the court's proposed instruction which combined the elements of conspiracy into the excessive force instruction.

The conspiracy among the defendants to beat Michael and then cover it up was an important theme in the trial and also supported the intent element required to prove excessive force. Throughout the trial, the jury heard evidence of a conspiracy, but, then was never given a means –a jury instruction—by which to

27

evaluate it.  Among other things, the following facts supporting a conspiracy were presented at trial:

- the deputies had worked together for a long time on the docket duty post;

- the comment made as they all exited the docket area with Michael—"your mouth is going to get you into more trouble;"

- the incident reports prepared by the defendants were all prepared at exactly the same time on the night in question, all stated that nothing had happened to Michael, and were all signed by a supervisor who was actually on military leave that night and could not have signed them;

- the video footage depicting the scene outside of Michael's cell during the exact time Michael testified the beating occurred was missing which would have shown any activity at the cell door including how Callahan exited and how Sutherland arrived on scene;

- the following facts regarding the preservation of video:

  o Sweetenberg of the Sheriff's Office saved video footage after receiving a request from the police department (JA Vol. IV, Defendants' Trial Exhibit 3 (Day 1) – Video Footage of Plaintiff in Roanoke City Jail) which was preserved on or before 11/19/2010, and

which included only the footage up through when the defendants

exited docketing with Michael (JA 620);

o  on or before 11/24/2010, which was prior to Michael making his

complaint to the sheriff's department, Sweetenberg created video disk

1 which included the missing footage from outside of the cell (JA 620;

JA Vol. IV, Video Disk 1);

o  after Michael complained to the Sheriff's department, Sweetenberg

created video disk 2, which included bits of footage showing Michael

in the Jail docketing area the morning after the assault, but despite

Michael's direct request that he be provided with all video footage

depicting his time in the Jail, Sweetenberg failed to provide him with

video from additional camera angles and from when he was

fingerprinted and photographed just a few hours after the incident in

the cell (JA 620; JA Vol. IV, Video Disk 2).

Because the district court refused to instruct the jury on conspiracy, the jury

was left to speculate as to the independent relevance or significance of the

evidence presented on conspiracy with no guidance from the court.  The district

court effectively directed a verdict on the conspiracy claim when it refused to

29

provide the separate jury instruction.  As such, it abused its discretion, and the judgment must be reversed.

## III.  The District Court Erred In Permitting Defense Counsel To Inject Into The Trial Michael's Consultations With Counsel

### A.  Standard of Review

The district court's decision to admit evidence is reviewed for abuse of discretion. *See United States v. Kelly*, 510 F.3d 433, 437 n. 3 (4th Cir. 2007).

### B.  Argument

During discovery defendants asked Michael for the date he first consulted with counsel and for the date he first hired counsel for this lawsuit.  Michael objected, and the district court upheld the objection on September 27, 2013. (JA 337).  Michael filed a motion in limine to exclude this line of questioning at trial. The district court ruled, however, that it would permit defendants to ask whether Michael consulted counsel prior to making his complaint to the Sheriff's Office. Defendants wanted to elicit this information in order to cast aspersions on Michael's motivation for complaining to the Sheriff's Office; the defense wanted to suggest that all Michael and his mother were out for was a "lawsuit."  After the court's ruling, they were permitted to do this and did argue that Michael's consultation with counsel prior to complaining to the Sheriff's Office was a mark against his credibility. (JA 899, 906).

30

The court's ruling placed Michael between a rock and a hard place. To prevent the fact from first coming out on cross examination, Michael testified on direct that he had consulted with a lawyer before he made his complaint with the Sheriff's Office. To dispel any curiosity over what occurred at the meeting and thus defeat the defense's argument that Michael was out for a lawsuit, Michael would have had to reveal what occurred at the meeting—confidential attorney client communications. If he chose to protect those communications, though, the jury would be left to speculate as to what occurred—which proved to be fertile ground for the defense. Michael could not fully assure the jury that he and his mother had not plotted to bring unsupported claims without revealing attorney client communications. This obviously became a sticking point for the jury, as evidenced by its only question during deliberations which focused on the timing of when Michael consulted with counsel in relation to making his complaint to the Sheriff's Department.

Federal Rule of Evidence 402 requires that evidence be relevant to be admissible. Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. F.R.E. 401. The court's determination of what constitutes "relevant evidence" is guided by the

nature of the claims and defenses in the cause of action. Relevant evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

The district court ruled in its September 27, 2013 Memorandum Opinion that evidence regarding counsel's representation creates the real potential for issues along the proverbial slippery slope. The court found that the dates on which Michael consulted with and hired counsel could very easily lead to implications protected by privilege, or to Michael's attorneys becoming witnesses. For these reasons, the court concluded that facts regarding the dates Michael first met with and retained counsel were not discoverable or should not be discovered. Contrary to this ruling, though, the court then ruled that this same evidence could become an issue at trial.

The district court's ruling on the motion in limine was an abuse of discretion. The facts surrounding Michael's consultation with counsel were not relevant to his claims of excessive force and conspiracy. Even if the court were to deem these facts remotely relevant, the probative value of such evidence was far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Defense counsel seized upon the testimony regarding the consultation with counsel to argue to the jury Michael and his mother had plotted

32

to bring this lawsuit. The jury obviously was misled by the evidence. The district
court abused its discretion in making this ruling, and the judgment of the trial court
must be reversed.

## IV. The District Court Abused Its Discretion In Denying The Motion For New Trial

### A. Standard of Review

The district court's denial of a motion for a new trial is reviewed for abuse
of discretion. *Figg v. Schroeder*, 312 F.3d 625, 641 (4th Cir. 2002).

### B. Argument

Michael timely moved for a new trial pursuant to Rules 59(a)(1) and (e) of
the Federal Rules of Civil Procedure, because the verdict was against the clear
weight of the evidence and would result in a miscarriage of justice. It is the duty
of the trial court to set aside the verdict and grant a new trial if the court is of the
opinion that (1) the verdict is against the clear weight of the evidence, or (2) is
based upon evidence which is false, or (3) will result in a miscarriage of justice,
even though there may be substantial evidence which would prevent the direction
of a verdict. *Aetna Casualty & Surety Company v. Yeatts*, 122 F.2d 350, 352-353
(4th Cir. 1941). A motion for a new trial may rest, *inter alia*, on the fact that "the
verdict is against the weight of the evidence, the damages are excessive, or that, for
other reasons, the trial was not fair to the party moving; and may raise questions of

33

law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Company v. Duncan*, 311 U.S. 243, 251 (1940). A crucial inquiry is whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair. *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994). In this case, Michael is entitled to a new trial for the following reasons.

First, as reflected in the record, the verdict was against the clear weight of the evidence. Michael established that he was healthy when he entered the Jail (JA 842-846), that defendants did use force against him beginning at the docketing counter and ending when they left him alone in his cell (JA 533-540, 511); that the force used in the cell was completely unnecessary and excessive (533-540; 739-741); that jail records and defendants' own expert witness testimony support that his hand was already injured by the time he was fingerprinted (JA 854 (see right and left writers' palm impressions); 795); that Jail video from the next morning shows Michael favoring his hand (JA 545-549; 623-632; Vol. IV, Video Disk 2, ch03 video files); that his mother noted his injuries when she picked Michael up from the Jail (JA 478-479); that within 30 minutes of leaving the Jail the incident and injuries were documented by the police (JA 633, 605-612); that immediately thereafter Michael was diagnosed with a fractured hand and treated by physicians

34

who also noted other injuries and marks on his body. (JA 685-688, 665-667). The defendants' only defense was their own statements that it didn't happen at all. The verdict was against the clear weight of evidence and should be overturned.

Second, as previously discussed, the district court's summary judgment ruling impermissibly restricted the jury from adjudicating all of the facts. When the jury was instructed to curtail its findings to whether excessive force occurred in the cell, the implication was that the defendants' conduct at the counter was separate from that in the cell and legitimate. This unnaturally constrained Michael's claim of excessive force and the jury's adjudication of the facts.

Third, also as fully set forth *supra*, at the close of the liability phase, the district court refused to instruct the jury on the conspiracy claim, instead offering to give an instruction that combined the elements of conspiracy with excessive force. Because the combined instruction would cause confusion, Michael objected to it and the court withdrew it, but offered no separate instruction on conspiracy.

Fourth, as previously discussed, the district court erred in ruling pre-trial and over Michael's objection, that it would permit defense counsel to question Michael about whether he consulted an attorney prior to making his complaint to the sheriff's department. The evidence was irrelevant to Michael's claims of excessive force and conspiracy, and the prejudicial value of the evidence was

35

overwhelming. The ruling put plaintiff's counsel in an untenable position; Michael was either required to reveal attorney-client communications, or let the jury speculate as to what occurred when Michael met with counsel.

Each of the errors enumerated above provided a sufficient ground for granting a new trial. The cumulative effect of these errors also mandates a remand for new trial. *See, e.g., Beck v. Hail*, 377 F.3d 624, 644-45 (6th Cir. 2004), *overruled on other grounds by Adkins v Wilever*, 554 F.3d 650 (6th Cir. 2009); *Frymire-Brunati v. KPMG Peat Marwick*, 2 F.3d 183, 188 (7th Cir. 1993); *Malek v. Federal Ins. Co.*, 944 F.2d 49, 55 (2nd Cir. 1993). The district court abused its discretion in denying the Motion for a New Trial, and the judgment must be reversed.

## V.    The District Court Erred In Denying Michael's Objection To The Magistrate Judge's Discovery Ruling On Defendants' Prior Uses Of Force
### A.  Standard of Review

The district court's discovery rulings are reviewed for abuse of discretion, which may be found where denial of discovery caused substantial prejudice. *Kolon Industries, Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014).

## B.  Argument

Michael submitted Requests for Production to defendants, seeking defendants' personnel files, the Incident Based Reports ("IBRs") prepared by each defendant whenever he or she took out a criminal charge against an inmate, and all complaints made against defendants involving use of force.  The Magistrate Judge ruled that only three investigative reports and written complaints which the court found to be substantially similar to the incident involving Michael would be provided.  Michael objected to the Magistrate Judge's ruling, and the district court overruled the objections. (JA 204-205).

Parties may discover any matter, not privileged, that is relevant to any claim or defense. F.R.C.P. 26(b)(1).  Courts give discovery rules a broad and liberal treatment. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *National Union Fire Ins. Co. of Pittsburgh, PA. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992).

Defendants' personnel files, incident based reports, and prior complaints involving use of force were discoverable, as they would contain information that is reasonably calculated to lead to the discovery of relevant evidence. *See, e.g., Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D. N.Y. 2006) (holding that "[d]isciplinary records involving complaints of a similar nature, whether

37

substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable); *Pacheco v. City of New York,* 234 F.R.D. 53, 55 (E.D.N.Y. 2006) (supporting discovery of unsustained allegations because "the plaintiff should be given an opportunity to seek out the witnesses to the other allegations of misconduct and produce them at trial if they have evidence that would tend to prove the defendants' intent"); *Gibbs v. City of New York,* 243 F.R.D. 95, 96 (S.D.N.Y. 2007) (stating that while an argument may be made that the unsustained allegations are not admissible in court, whether "the prejudicial effect of unsubstantiated complaints might outweigh their probative value is something to be addressed when considering their admissibility as evidence, not their discoverability").

Courts have recognized that in § 1983 actions, police personnel files and complaint histories are relevant and discoverable. *See Green v. Baca*, 226 F.R.D. 624, 664 (C.D. Cal. 2005). One court aptly stated:

> Given the elusiveness of proof of some kinds of civil rights claims (especially those that turn on proof that defendants acted with improper motives or an evil heart), and the importance of the policies that inform civil rights laws, it is especially important that judges give plaintiffs in these matters a fully reasonable opportunity to develop evidence in support of their claims. Doubts must be resolved, at the discovery stage, in favor of claimant.

*King v. Conte*, 121 F.R.D. 180, 187 (S.D. N.Y. 1990). Prior complaints of the use of excessive force may be admissible under inclusionary Federal Rule of Evidence 404(b). The number of incidents in which defendants have been alleged to have used excessive force is probative on the question of whether the force was applied to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. *See, e.g., Eng v. Scully*, 146 F.R.D. 74 (S.D.N.Y. 1993). A plaintiff in an excessive force case may prove by extrinsic evidence of other instances that the defendant acted maliciously and sadistically for the purpose of causing harm. *Ismail v. Cohen,* 706 F. Supp. 243, 253 (S.D. N.Y. 1989), *aff'd* 899 F.2d 183 (2nd Cir. 1990). In *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), *as modified on denial of reh'g* (Dec. 8, 1993), the Seventh Circuit ruled that it was error to exclude evidence that a defendant, who tortured the plaintiff, had subjected another suspect to electroshock to extract a confession nine days previously. The evidence was admissible to show intent, opportunity and plan, but not propensity. In *Kopf v. Skyrm,* 993 F.2d 374 (4th Cir.1993), evidence that a canine officer had previously shot and killed a suspect who stabbed his dog, and that the officer vowed not to forget the incident, was admissible. *See also O'Neill v. Krzeminski,* 839 F.2d 9, 11 n. 1 (2nd Cir.1988) (evidence of other instances where officer used excessive force admitted to show pattern and intent in constitutional tort case); *Eng v. Scully,* 146

F.R.D. 74, 79 (S.D.N.Y.1993) (same); *Carson v. Polley,* 689 F.2d 562, 572 (5th Cir. 1982) (holding that performance reports stating that defendant needed to "'work on controlling temper and personal feelings' because he 'tends to get into arguments with inmates, lets his temper flare up too quickly'" were admissible to show defendant's "intent to do harm to [plaintiff]").

In civil rights actions, courts have permitted *discovery* of prior similar complaints or incidents regardless of the outcome of those complaints. *See, e.g., Phillips v. City of New York*, 277 F.R.D. 82 (E.D.N.Y. 2011)(discovery of complaints and internal investigations of the defendant officer going back ten years permitted); *Unger v. Cohen,* 125 F.R.D. 67, 70 (S.D.N.Y.1989) ("complaints that were abandoned or conciliated may not be admissible at trial, but that does not make them undiscoverable"; information about "accusations is an obvious source of 'leads' which resourceful counsel may pursue to [discover] evidence bearing on intent or other facts in issue"); *Ruther v. Boyle,* 879 F.Supp. 247, 252 (E.D.N.Y.1995).  Thus, the fact that a prior complaint was determined to be unfounded does not bar its discovery. Whether the incident resulted in conviction, dismissal, settlement or lawsuit does not negate the existence of the occurrence.

Defendants' personnel files and history of complaints were relevant and discoverable.  The information was reasonably calculated to lead to admissible

evidence of motive, opportunity, intent, preparation, plan and knowledge under

Federal Rule of Evidence 404(b).  The Magistrate Judge prematurely curtailed

discoverable information which would have permitted Michael to freely discover

his case.  The district court abused its discretion in failing to reverse the Magistrate

Judge's overly protective decision that only three investigative reports and written

complaints regarding defendants' use of force were discoverable.  The district

court's ruling caused substantial prejudice; as a result of the ruling Michael was

unable to freely discover evidence that he could have used to establish motive,

intent, opportunity and plan.  Accordingly, the judgment must be reversed.

## VI.    The District Court Erred In Dismissing Michael's § 1983 Claims Against Sheriff Johnson

### A.  Standard of Review

A district court's dismissal for failure to state a claim under Rule 12(b)(6) is

reviewed *de novo. Secretary of State for Defence v. Trimble Navigation, Ltd.*, 484

F.3d 700, 705 (4th Cir. 2007).

### B.  Argument

In ruling on a 12(b)(6) motion, the complaint is construed in the light most

favorable to plaintiff and his allegations are taken as true. *Scheuer v. Rhodes*, 416

U.S. 232 (1974).  A claim is facially plausible when plaintiff pleads factual content

from which the court can reasonably infer that defendant is liable for the

misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is improper even if it appears that the chance of recovery is very remote. *Scheuer,* 416 U.S. at 236.

The district court granted Johnson's Motion to Dismiss on February 14, 2013, finding that Michael had not alleged sufficient facts to show that Johnson knew of a pervasive and unreasonable risk of constitutional injury and failed to act under circumstances that give rise to an inference of deliberate indifference.

The Second Amended Complaint contains the following allegations against Defendant Johnson concerning her responsibility for the training, supervision and conduct of the deputies employed in her office, as well as her knowledge of the defendants' use of excessive force, and her failure to take corrective action:

> 5.  At all relevant times, Defendant Sheriff Johnson was the duly elected Sheriff of the City of Roanoke.  As such, she was the commanding officer of the deputy and sergeant defendants and was responsible for their training, supervision and conduct and also for promulgating policies and customs regarding the training and supervision of deputies and sergeants and the use of force during arrest and detention.  She was also responsible by law for the operation of the Roanoke City Jail, enforcing the regulations of the Roanoke City Sheriff's Office, and ensuring that personnel obey the laws of the Commonwealth of Virginia and the United States.  Sheriff Johnson served as the final policymaker for the Roanoke City Sheriff's Office, and was vested with the responsibility and authority to hire, train, supervise, set and enforce policies and procedures, and to provide protection to the citizens of the City of Roanoke, including the plaintiff.

42

\*\*\*

11.  The actions of defendants complained of herein, individually and/or in conjunction with other employees of the City of Roanoke Sheriff's Office, constitute the official policy, practice or custom of the City of Roanoke Sheriff's Office as promulgated by Sheriff Johnson.  Defendants' conduct represents a reckless or callous indifference to Plaintiff's rights.  The violation of Mr. Gemaehlich's constitutional rights resulted from the execution of a government policy, custom or official decision.  Sheriff Johnson's tacit approval of the use of excessive force, and the failure of these defendants to exercise proper care in the hiring, training, or supervising of their employees were proximate causes of the injuries suffered by the Plaintiff.

\*\*\*

24.  On information and belief, the excessive force to which Plaintiff was subjected was an institutionalized practice of the Roanoke City Sheriff's Office which practice was known to and ratified by the Sheriff.  The Sheriff was specifically aware of the use of excessive force on the part of the deputies in her office, including the Defendant deputies and sergeant, on multiple, prior occasions, but took no effective action to prevent personnel from engaging in such misconduct.  Furthermore, the Sheriff was aware of and/or participated in effort to cover up such incidents by the falsification of incident reports and the alteration or deletion of video footage of incidents of excessive force in the Roanoke City Jail.

25.  Upon information and belief, other inmates and detainees have been subjected to the use of excessive force while detained at the Roanoke City Jail.  For instance, in February, 2006, Hezekiah Harvey was beaten by deputies and officers at the Roanoke City Jail.  The beatings ultimately resulted in the death of Hezekiah Harvey.  On February 22, 2008, Thomas Scott Vandegrift was assaulted and injured by at least three deputies, including defendant Ferrell, while he was detained at the Roanoke City Jail.  Similarly, DaVon Bell was assaulted and beaten by the guards while detained at the Roanoke City

43

Jail on September 14, 2008.  Mr. Bell suffered a fractured elbow, as well as other injuries.  Jacob Stewart was also beaten by the deputies and officers at the Roanoke City Jail on September 14, 2008, and the deputy involved in the incident received a suspension, which he never served.  In February, 2009, an inmate had her arm grabbed and twisted behind her back, her hair grabbed, and her face slammed into the counter, causing her nose to bleed.  She was dragged to a cell and thrown on the metal bunk, and was then kneed in the back and had her arm twisted behind her back.  Terrence Lavender was assaulted by deputies at the Roanoke City Jail on March 21, 2009 while he was detained as a pretrial detainee.  Mr. Lavender lost a tooth, and suffered a laceration to his head as a result of the assault.

26.  Upon information and belief, Sheriff Johnson had prior notice of the deputy and sergeant defendants' vicious and malicious tendencies, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

27.  Upon information and belief, Sheriff Johnson failed to take corrective action regarding the use of excessive force by the deputies and sergeant, and failed to provide appropriate training and supervision regarding the proper use of force during the arrest and detention of individuals, such as Mr. Gemaehlich.

28.  Upon information and belief, Sheriff Johnson failed to instruct, supervise, control and train the deputy and sergeant Defendants regarding the proper use of force during the arrest and detention of individuals.  This failure was the result of official policy or custom and practice of the City of Roanoke Sheriff's Office as managed and supervised by Sheriff Johnson.  Sheriff Johnson had knowledge, or had she diligently exercised her duties to instruct, supervise, control, train, or discipline on a continuing basis, should have had knowledge, that the wrongs which were done were being committed.  Defendant Sheriff Johnson had the power to prevent or aid in preventing the commission of these wrongs, and could have done so by reasonable diligence, but she intentionally, knowingly, or recklessly failed or refused to do so.

44

\*\*\*

38.  Defendant Johnson is responsible for the training, supervision and conduct of the deputies and sergeant employed by her office.  She is responsible for providing training regarding the use of appropriate force upon the arrest and detention of individuals, and further is responsible for ensuring that the deputies and sergeant employed by her office do not use excessive and unreasonable force in the arrest and detention of individuals.  Defendant Johnson, with final policy-making authority for the City of Roanoke and the City of Roanoke Sheriff's Office, was responsible for the violation of Plaintiff's constitutional rights.

39.  Defendant Johnson was personally involved in and responsible for the excessive force used against Mr. Gemaehlich in that:

a.  She created a policy and custom, and she allowed the continuance of a policy and custom, under which pretrial detainees and individuals brought to the Roanoke City Jail Docket Area, would be subjected to the use of excessive and unreasonable force;

b.  She created a policy and custom, and she allowed the continuance of a policy and custom, under which incident reports were falsified and evidence of incidents of excessive force against detainees was altered; and

c. She was deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein.

40.  The gross indifference by the Sheriff to the conduct of her deputies and sergeant, which includes repeated failures to follow policy and procedures, unnecessary use of excessive force, roughness during arrest, intimidation of suspects during arrests and booking procedures, falsification of incident reports, and alteration of video footage of jail incidents, led to the violation of Mr. Gemaehlich's constitutionally protected rights.  The failure of Sheriff Johnson to take corrective action after learning of instances of officer

45

misconduct, and the failure to properly train the deputies and sergeant, led to these violations.

41.  All defendants acted pursuant to the policies, regulations and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy or were pursuant to a governmental custom, usage or practice of the Roanoke City Sheriff's Office through its Sheriff, Defendant Johnson.

These allegations, when viewed in the light most favorable to Michael, were sufficient for the district court to conclude that Michael had established that Johnson knew of a pervasive and unreasonable risk of constitutional injury and failed to act under circumstances that give rise to an inference of deliberate indifference.

To impose liability on Johnson for failure to train her subordinates, Michael must plead and prove that the subordinates actually violated Michael's constitutional rights; that Johnson failed to properly train the subordinates, illustrating a "deliberate indifference" to the rights of those with whom the subordinates came into contact; and that this failure to train actually caused the subordinates to violate Michael's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989); *see also Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000).  Michael alleged the necessary facts to proceed against the Sheriff beyond a Motion to Dismiss.  It was error to dismiss the claims under Rule 12(b)(6) and the judgment should be reversed.

46

## VII. The District Court Erred In Dismissing Michael's Assault And Battery Claims

### A. Standard of Review

The district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo. Secretary of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### B. Argument

The District Court erroneously dismissed Michael's state law assault and battery claims pursuant to the one-year statute of limitations in Virginia Code § 8.01-243.2. One year after the assault, the law had not been resolved as to whether the abbreviated statute of limitations applied to pretrial detainees who are not confined at the time of filing. Moreover, defendants prevented Michael from pursuing his administrative remedies and should have been estopped, therefore, from arguing that the claim was barred by the one-year statute of limitations.

Virginia Code § 8.01-243.2 provides:

No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

47

In *Bing v. Haywood*, 283 Va. 381, 722 S.E.2d 244 (2012), decided on March 2, 2012, the Virginia Supreme Court determined that a pre-trial detainee was "confined" at the time her cause of action accrued, that the unlawful body cavity search related to her conditions of confinement, and that § 8.01-243.2 applied to the detainee's suit.  Michael was assaulted by the deputies on November 10, 2010. On November 17, 2011, one year from the date of the assault, the *Bing* decision had not been issued.  Michael could not have known that the Virginia Supreme Court would rule a few months later that the one-year statute of limitations would apply to claims raised by pretrial detainees who were no longer confined, and therefore, had no reason to file by November 17, 2011.

In fact, in *Jackson v. Fletcher*, 2011 WL 197954 (W.D. Va. January 18, 2011), the district court had concluded that § 8.01-243.2 was not applicable since Jackson had been released and thus, was no longer confined at the time the action was filed.  The court noted that the statutory language is plain and unambiguous; it applies to "person[s] confined in a state or local correctional facility." Va. Code § 8.01-243.2.  This was the state of the law one year from the attack upon Mr. Gemaehlich.

Moreover, Michael attempted to pursue his administrative remedies with the Sheriff's Office by filing a complaint and meeting with Sheriff's Office personnel.

48

The Sheriff's Office refused to provide Michael with a written response to his administrative complaint, and refused to provide any records of the investigation into the incident. The Sheriff Office's failure to provide Michael with a written response to his administrative complaint prevented Michael from exhausting his administrative remedies. Generally, the failure to exhaust is not a jurisdictional defect, so such requirement is subject to equitable tolling and estoppel. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). Equitable estoppel is applicable where the plaintiff establishes affirmative misconduct by the government. *Zobrafov v. V.A. Medical Center*, 779 F.2d 967 (4th Cir. 1985). Under 42 U.S.C. § 1997e, which is comparable to § 8.01-243.2, courts have held that a defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable. *Ziemba v. Wezner*, 366 F.3d 161 (2nd Cir. 2004). In this case, the Sheriff Office's actions rendered administrative remedies unavailable, thus defendants should be equitably estopped from asserting the statute of limitations as a defense. Accordingly, the district court erred in dismissing the assault and battery claim.

## CONCLUSION

For the foregoing reasons, Michael Gemaehlich respectfully requests that the judgment of the district court be reversed, and this matter be remanded for a new trial.

Respectfully submitted this 14th day of July, 2014.

MICHAEL GEMAEHLICH

By: John P. Fishwick, Jr.
Of Counsel

John P. Fishwick
LichtensteinFishwick PLC
101 S. Jefferson St., Suite 400
P.O. Box 601
Roanoke, VA 24001
Telephone: (540) 345-5890
Facsimile: (540) 345-5789
jpf@vatrials.com
*Counsel for Appellant*

## REQUEST FOR ORAL ARGUMENT

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## CERTIFICATE OF COMPLIANCE

1. This brief of the appellant has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2.    EXCLUSIVE of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains 11,231 words.

Date: July 14, 2014

By: John P. Fishwick, Jr.
Of Counsel

## CERTIFICATE OF SERVICE

I certify that on July 14, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Carlene Booth Johnson, Esq.
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, VA 23936
perrylawfirm@hughes.net

By: John P. Fishwick, Jr.
Of Counsel

51